Case 4:15-cv-01811 Document 17 Filed in TXSD on 03/03/16 Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
March 03, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELLE LEE EDWARDS, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-15-1811 |
| COACHES SPORTS BAR & GRILL HUMBLE, L.L.C., | § § § | |
| Defendant. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Plaintiff's Motion to Certify Class (Doc. 12). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED**.

### I. Case Background

Plaintiff Michelle Edwards ("Plaintiff"), individually and on behalf of all other similarly situated individuals, filed this action against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., alleging that Defendant Coaches Sports Bar & Grill Humble, LLC ("Defendant") failed to pay its nonexempt employees at the federally mandated minimum wage and overtime rates.

#### A. Procedural History

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 16.

Plaintiff filed this lawsuit against Defendant on June 25, 2015, alleging willful violations of the FLSA.[2] Plaintiff filed the pending motion for conditional class certification on November 17, 2015, seeking to certify the following class, according to her complaint: "all current and former tipped employees employed by Defendant at any time three years prior to the filing of this lawsuit to the present."[3] The motion to certify class requested permission to issue notice to all "employees who, at any point during the three years prior to the filing of this lawsuit, did not receive their minimum wage of $7.25 for each hour worked, or did not receive overtime pay for all hours worked over 40 in a week."[4] In her motion, Plaintiff asks the court to: (1) conditionally certify this suit as a collective action; (2) approve the notice to prospective class members attached as Exhibit A; (3) require Defendant to post such notice and provide last known names, addresses, and email addresses of all potential class members within fourteen days; and (4) authorize Plaintiff to mail the notice to potential class members.[5]

On December 18, 2015, Defendant filed a response in opposition

---

[2] See Doc. 1, Pl.'s Compl.

[3] See Doc. 12, Pl.'s Mot. to Certify Class; Doc. 1, Pl.'s Compl. p. 8.

[4] See Doc. 12, Pl.'s Mot. to Certify Class p. 16.

[5] See id.

to Plaintiff's motion for conditional class certification, arguing that the class should be denied or in the alternative limited to bartenders and wait-staff.[6]

**B.  Factual History**

Defendant operates a bar and grill restaurant in the greater Houston, Texas, area.[7]  Plaintiff was employed by Defendant as a waiter and bartender from approximately June 2013 to April 2014, and again from September 2014 through the date of Plaintiff's complaint.[8]

Plaintiff and other waiters and bartenders were responsible for taking food and drink orders, serving food, refilling drinks, and making menu recommendations.[9]  As a bartender, Plaintiff additionally prepared cocktails and served drinks.[10]  Plaintiff was paid $2.13 per hour plus tips when waiting tables and $3.50 per hour during the day shift and $2.13 per hour during the night shift plus tips when working as a bartender.[11]

The complaint alleges that Plaintiff and other staff were not

---

[6]    See Doc. 15, Def.'s Resp. to Pl.'s Mot. to Certify Class.

[7]    See Doc. 1, Pl.'s Compl. p. 3.

[8]    See id. p. 4.

[9]    See Doc. 12-2, Ex. 2 to Pl.'s Mot. to Certify Class, Pl.'s Aff. ¶ 3.

[10]   See id. ¶ 4.

[11]   See id. ¶ 3-4.

compensated at a rate of one-and-a-half times their regular rate for every hour worked over forty per week.[12] Further, Plaintiff and other waiters and bartenders were required to participate in a tip pool, in which waiters shared their tips with bartenders, bar backs, foodrunners, and "swampers", and bartenders shared tips with bar backs, foodrunners and "swampers."[13] Plaintiff alleges that Defendant did not inform employees of Defendant's tip pool procedure.[14] Plaintiff also alleges she was told by managers that Defendant did not pay overtime.[15] Plaintiff believes that Defendant's pay practices were applied to all of Defendant's employees who held similar positions.[16]

Along with her affidavit, Plaintiff's motion for conditional class certification included affidavits by four other individuals employed by Defendant.[17] Joshua Prince ("Prince") averred that he regularly worked overtime and was not paid time and a half for

---

[12] See Doc. 1, Pl.'s Compl. p. 6.

[13] See Doc. 12-2, Ex. 2 to Pl.'s Mot. to Certify Class, Pl.'s Aff. ¶ 7. Plaintiff explained a "swamper," was a busboy. Id. ¶ 8.

[14] See id. ¶ 5.

[15] See id. ¶ 8.

[16] See id. ¶ 10.

[17] See Doc. 12-3, Ex. 3 to Pl.'s Mot. to Certify Class, Aff. of Prince; Doc. 12-4 Ex. 4 to Pl.'s Mot. to Certify Class, Aff. of Lindstrom; Doc. 12-5, Ex. 5 to Pl.'s Mot. to Certify Class, Aff. of Reed; Doc. 12-6, Ex. 6 to Pl.'s Mot. to Certify Class, Aff. of Wiggins.

those hours.[18] Prince also averred that he was not paid an hourly rate at all, but only received his tips, which he was forced to share, via the tip pool, with dishwashers and the cook who had no interaction with the customers.[19] A manager informed Prince that if employees reported overtime per the clock, it would be deleted.[20]

Kelsey Reed ("Reed") stated that she was not paid an hourly rate but only received her tips, less the amount paid to the tip pool.[21] Reed was not paid overtime for hours worked over forty and was required to tip the kitchen staff because they participated in the tip pool.[22] Reed stated that she would be asked by management not to clock in when she worked more than forty hours in a week.[23]

Courtney Lindstrom ("Lindstrom") complained that in addition to her waitress duties, for which she was paid $2.13 per hour, she was required to clean her portion of the restaurant after her shift ended for the same hourly rate, including sweeping, throwing away trash, and cleaning tables, which duties could take up to two and

---

[18] See Doc. 12-3, Ex. 3 to Pl.'s Mot. to Certify Class, Aff. of Prince ¶ 3.

[19] Id. ¶¶ 6, 7.

[20] Id. ¶ 9.

[21] See Doc.12-5, Ex. 5 to Pl.'s Mot. to Certify Class, Aff. of Reed ¶ 3.

[22] Id. ¶¶ 3, 6.

[23] Id. ¶3.

one-half hours after closing to complete.[24] A manager told Lindstrom that she would not be paid overtime.[25] Lindstrom confirmed that kitchen workers participated in the tip pool.[26]

Lucas Wiggins ("Wiggins") also submitted an affidavit stating that he had worked as a dishwasher, for which he was paid $7.25 per hour.[27] His duties included washing dishes, mopping the floor, and general cleaning and maintenance.[28] He stated that he worked significantly more than forty hours per week but was "not paid at all" for working those hours.[29] A manager told him that he would never be paid for overtime.[30] Wiggins also testified that he was aware of two other kitchen workers who also were not paid for their overtime hours.[31]

## II. Legal Standard

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours. 29

---

[24] See Doc. 12-4, Ex. 4 to Pl.'s Mot. to Certify Class, Aff. of Lindstrom ¶ 2.

[25] Id. ¶4.

[26] Id. ¶8.

[27] See Doc. 12-6, Ex. 6 to Pl.'s Mot. to Certify Class, Aff. of Wiggins ¶ 2.

[28] See id.

[29] See id. ¶ 4.

[30] Id. ¶ 5.

[31] Id. ¶ 6.

U.S.C. § 207(a). It allows employees to bring an action against their employers for violation of its hour and wage provisions. See 29 U.S.C. §§ 215-216. An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, i.e., to persons alleged to be "similarly situated" to the named plaintiff. Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are "similarly situated" is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987); or (2) the "spurious class action" analysis described in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990). See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of the two analyses is appropriate).[32]

---

[32] Mooney v. Aramco Services Co. was an action under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. See Mooney, 54 F.3d at 1212.

7

Under the <u>Lusardi</u> approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516, 519 (5th Cir. 2010) (citing <u>Mooney</u>, 54 F.3d at 1213-14). The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." <u>Mooney</u>, 54 F.3d at 1214 & n.8. If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit. <u>Acevedo</u>, 600 F.3d at 519 (citing <u>Mooney</u>, 54 F.3d at 1214). Next, once discovery has largely been completed, and, thus, more information on the case made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action. <u>Id.</u>

According to the Fifth Circuit, the <u>Shushan</u> approach, known as the "spurious class action" analysis, is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> <u>Shushan</u> espouses the view that [29 U.S.C. § 216(b) ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23]. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . .

>     [the FLSA].  In application, the court determined that
>     Congress intended the "similarly situated" inquiry to be
>     coextensive with Rule 23 class certification.  In other
>     words, the court looks at "numerosity," "commonality,"
>     "typicality" and "adequacy of representation" to
>     determine whether a class should be certified.  Under
>     this methodology, the primary distinction between a . .
>     . [FLSA] representative action and a [Rule 23] class
>     action is that persons who do not elect to opt-in to the
>     . . . [FLSA] representative action are not bound by its
>     results.  In contrast, Rule 23 class members become party
>     to the litigation through no action of their own, and are
>     bound by its results.

Mooney, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should use to determine whether plaintiffs are sufficiently "similarly situated" to advance their claims together in a single action under Section 216(b).  Acevedo, 600 F.3d at 518-19.  Although it has stated that not all class action standards are applicable to Section 216(b) actions, the court has explicitly left open the question of whether the Lusardi approach, the Shushan approach, or some third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action.  Id. (citing Mooney, 54 F.3d at 1216; LaChapelle v. Owens-Ill., Inc., 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the Lusardi approach in suits brought under Section 216(b).  See, e.g., Tolentino v. C & J Spec-Rent Servs., Inc., 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010) (collecting cases).  The Lusardi approach is

9

consistent with Fifth Circuit dicta stating that the two-step approach is the typical manner in which these collective actions proceed. Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008). The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by [Rule 23] and that provided for by [Section 216(b)]," i.e., the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b). LaChapelle, 513 F.2d at 288; see also Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures."). This court, therefore, will analyze Plaintiff's claims using the Lusardi method.

The present case is at the "notice stage" of the Lusardi analysis. At this stage, the court's decision is "made using a fairly lenient standard;" a plaintiff need only make a minimum showing to guide the court's determination whether to issue notice to potential class members. Mooney, F.3d at 1214.

In the absence of Fifth Circuit guidance on the appropriate test to use at the notice stage of the Lusardi analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification. Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved

10

individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See, e.g., Cantu v. Vitol, Inc., No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); Tolentino, 716 F. Supp. 2d at 653. Other courts, however, have rejected the third, non-statutory element. See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc., No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (unpublished); Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007).

The court agrees with the latter camp that Plaintiff need not present evidence of the third element at this stage of the certification process. There are several reasons for this. First, as already stated, this element is not a statutory requirement at this stage. See 29 U.S.C. § 216(b). Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited. Rather, the Fifth Circuit's discussion of the Lusardi approach only requires, at the first stage, that "putative class members' claims [be] sufficiently similar to merit sending notice of the action to possible members of the class." See Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1213-14).

Third, unlike under Rule 23, there is no numerosity requirement in an FLSA class action lawsuit under the Lusardi

approach.  See, e.g., Badgett v. Tex. Taco Cabana, L.P., No. A-05-3624, 2006 WL 367872, at *2 (S.D. Tex. Feb. 14, 2006) (unpublished) (citing Mooney, 54 F.3d at 1214, n.8) ("[A]t the notice stage [in an FLSA action using the Lusardi approach], courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." (internal quotations omitted)).

Finally, this element, requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes.  See Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985).  Liberally construing the FLSA to effect its purposes, the court finds that it is enough for Plaintiff to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually wish to join the lawsuit.

Based on these considerations, the court will address only the first two elements of the Lusardi test.

### III. Analysis

Defendant urges the court to reject Plaintiff's request for conditional class certification.  It argues that a certifiable class does not exist because Plaintiff and the proposed class are not similarly situated.  In the alternative, Defendant argues that

Plaintiff's putative class should be limited to bartenders and wait staff.  The court addresses Defendant's arguments in turn.

Here, Plaintiff asserts that Defendant violated the FLSA by (1) failing to pay time-and-a-half overtime to employees; (2) failing to pay its employees minimum wage; (3) improperly sharing server and bartender's tips with dishwashers and other ineligible employees; and (4) failing to notify employees regarding tip credits.[33]

Plaintiff's original complaint defined its class as all tipped employees employed by Defendant.  In its motion to certify class, Plaintiff amended its prospective class to include all individuals who were not paid minimum wage and/or did not receive overtime pay.

Defendant argues that Plaintiff's proposed class should not be certified, or, in the alternative, should be limited to "the jobs which [she] actually had."  Defendant also argues that Plaintiff must provide some reasonable basis that all class members were subject to a single decision, policy, or plan.  See Nieddu v. Lifetime Fitness, Inc., 977 F. Supp. 2d 686, 691 (S.D. Tex. 2013).  Defendant notes that putative class members must be similarly situated with regard to job requirements and pay provisions.  See id.

Defendant's argument that Plaintiff cannot include members of jobs she did not hold is unavailing.  The FLSA allows a plaintiff

---

[33]   See Doc. 1, Pl.'s Compl.

to bring an action on behalf of similarly situated individuals and is thus not limited to positions Plaintiff actually held. See Heeq v. Adams Harris, Inc., 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012) (holding that job positions within a potential class must be similar, not identical).

Defendant is correct that Plaintiff must show by substantial allegations that a class of similarly situated individuals exists. See Nieddu, 977 F. Supp. 2d at 691. A potential class is considered similarly situated if it can show that it was affected by a single decision, policy, or plan. Id. (quoting Aguirre v. SBC Commc'ns, Inc., 2006 WL 964554, at *5 (S.D. Tex. Apr. 11, 2006)). In Heeq v. Adams Harris, Inc., this court rejected a claim as overbroad where plaintiffs proposed a class that included "computer professionals" because it included individuals with job duties not similarly situated to the plaintiffs' duties. Heeq, 907 F. Supp. 2d at 863. While potential class members job titles need not be identical, in the absence of similarity in job duties and pay provisions, class certification should be denied. Id. at 862; Villarreal v. St. Luke's Episcopal Hosp., 751 F. Supp. 2d 902, 919 (S.D. Tex. 2010).

Here, Plaintiff asserts that she is similarly situated to all wait staff, bartenders, and kitchen workers employed by Defendant within the last three years because no employee was paid for overtime hours. Plaintiff additionally argues that wait staff and

14

bartenders are similarly situated because Defendant had an overarching policy of denying minimum wage.

In support, Plaintiff argues that Defendant had a common policy to not pay tipped employees minimum wage, did not provide notice of its tip pool procedures, improperly required wait staff and bartenders to share tips with kitchen workers, and failed to compensate employees for overtime hours worked.[34] Plaintiff argues that she has met her burden to support a reasonable inference that all employees were either not paid minimum wage or were not paid overtime.[35]

As discussed earlier, at this stage of the proceeding, whether claims are sufficiently similar is viewed in a lenient light. Acevedo, 600 F.3d at 519 (citing Mooney, F.3d at 1214). The court finds that Plaintiff's motion and supporting affidavits adequately allege the existence of a policy not to pay any employee for overtime hours and that wait staff, bartenders and kitchen workers are similarly situated with respect to that policy.

Plaintiff's motion also supports a claim that wait staff and bartenders are similarly situated with respect to the following alleged policies: (1) not to pay minimum wage based on their forced participation in a tip pool shared with kitchen staff; (2) not to pay wait-staff $2.13 for hours worked; and (3) to pay $2.13 per

---

[34] See Doc. 12, Pl.'s Mot. to Certify Class pp. 1-2.

[35] See id. p. 15.

hour for non-tipped job duties.  While the latter two policies may have been applied less consistently to all employees than the first policy, the evidence supports an inference that Defendant had an overarching policy not to pay the required minimum wage to tipped employees.  The court will not require separate classes or lawsuits for each damage category in such a case.

Plaintiff has adequately alleged that other aggrieved individuals exist and that those individuals are similarly situated to Plaintiff relative to the above claims.  Plaintiff has thus established that a class exists, consisting of:  All employees who, at any point during the three years prior to the filing of this lawsuit, did not receive the minimum wage of $7.25 for each hour worked, or did not receive overtime pay for all hours worked over forty in a week.

Plaintiff additionally requests Defendant to post her proposed notice in a plainly visible area of Defendant's restaurant and to produce last known names, addresses, and email addresses for all current and former workers within the potential class.  Defendant does not object to either request.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Class Certification be **GRANTED** and that the court certify the following class:

All employees who, at any point during the three years

prior to the filing of this lawsuit, did not receive minimum wage of $7.25 for each hour worked, or did not receive overtime pay for all hours worked over forty in a week.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 3rd day of March, 2016.

_____
U.S. MAGISTRATE JUDGE